WILLIAM H. PERRY AND MARION E. PERRY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4428-66. Filed June 16, 1970.

*Max Myers*, *William H. Perry III*, and *Richard M. Webster*, for the petitioners.

*Hugh C. McMahon*, for the respondent.

**OPINION**

The question before us is whether a shareholder in a small business corporation can create corporate indebtedness within the purview of section 1374(c)(2)(B)[2] by a partially tax-motivated transaction

---

[2] All statutory references, unless otherwise indicated, are to the Internal Revenue Code of 1954, as amended.

SEC. 1374. CORPORATION NET OPERATING LOSS ALLOWED TO SHAREHOLDERS.
 (c) DETERMINATION OF SHAREHOLDER'S PORTION.—
 *        *        *        *        *        *        *
 (2) LIMITATION.—A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of—
 *        *        *        *        *        *        *
 (B) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation (or, if the shareholder is not a shareholder as of the close of such taxable year, as of the close of the last day in such taxable year on which the shareholder was a shareholder in the corporation).

in which the shareholder's demand note is issued to the corporation in exchange for its long-term note in a like amount. We hold that this question must be answered in the negative.

Viewed from our vantage point, the facts of this case yield an aroma of alchemist's brew. Cf. *Knetsch* v. *United States*, 364 U.S. 361 (1960). As we see matters, the transactions in this case amounted to little more than the posting of offsetting book entries, accompanied by the drafting of illusory instruments in commemoration thereof. Whether, in fact, petitioner's notes could, at some future time, have been enforced by Cardinal is, to our way of thinking, irrelevant. What is relevant is that in pure, pragmatic terms the exchanges of notes which generated Cardinal's long-term "indebtedness" left petitioner economically unimpaired, both actually and constructively.

Section 1374(c)(2)(B), along with the other tax option corporation provisions which were part of the Technical Amendments Act of 1958, originated in the Senate. The report of the Committee on Finance of the Senate discloses the purpose of this section as follows:

The amount of the net operating loss apportioned to any shareholder pursuant to the above rule is limited under section 1374(c)(2) to the adjusted basis of the shareholder's *investment* in the corporation; that is, to the adjusted basis of the stock in the corporation owned by the shareholder and the adjusted basis of any indebtedness of the corporation to the shareholder. * * * [Emphasis supplied. 1958-3 C.B. 1141.]

As we construed the language employed by the Committee on Finance, it appears to us that, given its most familiar meaning, *Old Colony R. Co.* v. *Commissioner*, 284 U.S. 552 (1932), the use of the word "investment"[3] reveals an intent, on the part of the committee, to limit the applicability of section 1374(c)(2)(B) to the actual economic outlay of the shareholder in question.

The rule which we reach by this interpretation is no more than a restatement of the well-settled maxim which requires that "Before any deduction is allowable there must have occurred some transaction which when fully consummated left the taxpayer poorer in a material sense." *Frederick R. Horne*, 5 T.C. 250 (1945). See also *Shoenberg* v. *Commissioner*, 77 F. 2d 446 (C.A. 8, 1935), affirming 30 B.T.A. 659 (1934); and *Joseph W. Powell*, 34 B.T.A. 655 (1936), affd. 94 F. 2d 483 (C.A. 1, 1938). As we see it, the exchange of paper in the case at bar left the taxpayer herein no poorer than the shareholder in *Shoenberg* who, after selling shares of stock through a broker at less than their cost, attempted to regain the shares (without forfeiting his loss deduction) by (a) having a corporation controlled by him purchase like shares which had been obtained by the broker, and (b) causing the corpora-

---

[3] Webster's Seventh New Collegiate Dictionary defines investment as "the outlay of money for income or profit;" also, "the sum invested or property purchased."

tion to sell the shares back to him. In affirming the Board and holding that no deductible loss had occurred, the Court of Appeals in *Shoenberg* employed the following language:

> To secure a deduction, the statute requires that an actual loss be sustained. An actual loss is not sustained unless when the entire transaction is concluded the taxpayer is poorer to the extent of the loss claimed; in other words, he has that much less than before.
>
> A loss as to particular property is usually realized by a sale thereof for less than it cost. However, where such sale is made as part of a plan whereby substantially identical property *is to be reacquired and that plan is carried out*, the realization of loss is not genuine and substantial; it is not real. This is true because the taxpayer has not actually changed his position and is no poorer than before the sale. The particular sale may be real, but the entire transaction prevents the loss from being actually suffered. Taxation is concerned with realities, and no loss is deductible which is not real.

Though *Shoenberg* dealt with an illusory sale of securities, the reasoning set out above is in our estimation equally applicable to the analogous transactions in the case now before us. Accordingly, we are compelled to deny the deductions sought by petitioner herein.

In arriving at this result, we are aware of the fact that petitioner maintained a hybrid system of tax accounting in which some transactions with corporations controlled by him were subject to accrual, and others not. However, even if we were to assume *arguendo* that petitioner had established to our satisfaction (which he has not) that the accrual method was employed by him in all transactions with Cardinal, including those now before us, we would still conclude that for purposes of section 1374(c)(2)(B) no method of accounting, in the absence of an actual loan of money or other valuable consideration, can serve as a philosopher's stone through which paper is transformed into indebtedness. Compare *Milton T. Raynor*, 50 T.C. 762 (1968), in which we held, in part, that notes executed by shareholders of a tax option corporation in favor of creditors of the corporation merely constituted additional security to such creditors, and could not, until the notes were actually satisfied, be considered as payment by the shareholders so as to give rise to section 1374(c)(2)(B) corporate indebtedness.

Like the notes in *Raynor*, the notes executed by petitioner in the instant case were, at best, no more than a form of indirect security intended to offer reassurance to those creditors of Cardinal who looked beyond the corporation to petitioner in assessing Cardinal's financial strength. Accordingly, the deduction sought by petitioner must be denied.

To reflect the agreement reached by the parties,

*Decision will be entered under Rule 50.*