**Morris G. UNDERWOOD and Jackie Underwood, Individuals, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**No. 75–1625.**

United States Court of Appeals, Fifth Circuit.

July 19, 1976.

Rehearing Denied Sept. 1, 1976.

**310**

Edward R. Smith, Lubbock, Tex., for petitioners-appellants.

Scott P. Crampton, Meyer Rothwacks, Wynette J. Hewett, Asst. Attys. Gen., Tax Div., Dept. of Justice, Gilbert E. Andrews, Acting Chief, Tax Div., Appellate Sect., Dept. of Justice, Meade Whitaker, IRS, Chief Counsel, Washington, D. C., for respondent-appellee.

Before GEWIN, GODBOLD and SIMPSON, Circuit Judges.

GEWIN, Circuit Judge:

This is an appeal from a decision of the United States Tax Court finding a deficiency in the taxpayers' federal income tax for the year 1969 in the aggregate amount of $8,788.66. The findings of fact of the Tax Court and the opinion of Judge Featherston were entered on January 27, 1975 and are reported at 63 T.C. 62. We affirm.

Taxpayers Morris G. Underwood and Jackie Underwood, husband and wife, are the sole shareholders of two corporations engaged in the retail barbecue cafeteria business, Underwood's Of Lubbock, Inc. (hereinafter Lubbock) and Underwood's of Albuquerque, Inc. (hereinafter Albuquerque). As of May, 1966, Albuquerque elected to be taxed as a small business corpora-tion under Subchapter S of the Internal Revenue Code, 26 U.S.C. §§ 1371–79; Lubbock did not so elect. From the outset the Lubbock operation had been consistently profitable; Albuquerque, on the other hand, was continually unprofitable. To help finance the latter's fledgling operations, from January, 1965 until October, 1966 Lubbock made a series of loans to Albuquerque totaling $110,000. In return, the Subchapter S corporation executed a series of demand notes to Lubbock, each bearing six percent interest.

An electing small business corporation under Subchapter S is not subject to the corporate income tax, § 1372(b)(1); instead, the corporate income is taxed pro rata to the shareholders. 26 U.S.C. § 1372(a). Concomitantly, when a Subchapter S corporation suffers a net operating loss, subsections 1374(a) and (d)(1) provide that the loss is passed through to the shareholders, each of whom may use his share of the loss to offset other personal income. There are, however, limitations upon the amount of the net operating loss deductible by the shareholder. Under § 1374(c)(2), a shareholder's deductible share of the Subchapter S corporation's net operating loss is limited to (A) his adjusted basis in his Subchapter S stock and (B) the adjusted basis of any indebtedness of the corporation to him.

Early in 1967 the taxpayers' accountant informed them that Albuquerque's anticipated losses could well exceed their combined basis of $13,000 in their Albuquerque stock. Accordingly, he advised them to consider taking measures that would increase their basis in Albuquerque's stock or indebtedness so that they could avail themselves of the deduction for that corporation's net operating losses. They settled upon the following plan, which was subsequently effectuated: (1) Lubbock surrendered the $110,-000 worth of Albuquerque notes to Albuquerque and marked them "paid" as of January 31, 1967; (2) the taxpayers substituted their personal demand note to Lubbock in the amount of $110,000 at six percent interest for the notes surrendered by Lubbock to Albuquerque; and (3) Albuquerque issued

to the taxpayers a demand note in the amount of $110,000 at six percent interest.[1]

At the time of the transaction, no party either advanced or received any funds. Lubbock regularly accrued and reported for income tax purposes the interest due on the taxpayers' note. In April of 1968 the taxpayers made a payment to Lubbock for interest due on their note. In the same month Albuquerque, which had never made any payments of either principal or interest on its notes to Lubbock prior to their cancellation, paid Lubbock $6,980. This sum represented the total amount of interest which had accrued on the notes as of January 31, 1967, the cancellation date. In 1969 the taxpayers made a second payment of interest to Lubbock.

Pursuant to § 1376(b), when a subchapter S shareholder takes a deduction for his corporation's net operating loss, the shareholder's basis in the corporation's stock is reduced by the amount of the deduction. By the end of 1968 the taxpayers had exhausted their bases in their Albuquerque stock. In the fiscal year ending April 30, 1969 Albuquerque had a net operating loss of $13,054.74; on their income tax returns for that year the taxpayers each took a deduction of $6,527.37 for his share of this loss.

On March 6, 1970, after the close of the tax year in issue, the taxpayers made a final payment of interest to Lubbock; they paid in full their note to Lubbock on March 27, 1970. At the time this suit was instituted, Albuquerque had made no payments to the taxpayers of either principal or interest on account of its note to them.

■ On the theory that this loss was not deductible by the taxpayers because in 1969 they had no basis in any stock or indebtedness of Albuquerque as required by Section 1374(c)(2), the Commissioner disallowed these deductions and assessed deficiencies. In the Tax Court the taxpayers argued that the 1967 exchange of papers had given them a basis of $110,000 in the Albuquerque note to them, thus entitling them to deductions for their share of Albuquerque's 1969 net operating loss. The Tax Court analogized the 1967 transaction to a shareholder's guaranty of his Subchapter S corporation's indebtedness and found that it should be treated similarly for purposes of § 1374(c)(2). Relying on cases holding that no basis-giving indebtedness within the meaning of § 1374(c)(2)(B) arises where a shareholder merely guarantees the debt of a Subchapter S corporation, the court found for the Commissioner. We agree with the reasoning of the court below.

■ In section 1374(c)(2)(B) the term "adjusted basis of any indebtedness of the corporation to the shareholder" is not specifically defined in relation to that section; however, the report of the Senate Committee on Finance accompanying the Subchapter S legislation indicates that the purpose of the section is to limit the amount of a Subchapter S corporation's net operating loss that may be deducted by a shareholder to the "adjusted basis of the shareholder's *investment* in the corporation." S.Rep. No. 1983, 85th Cong., 2d Sess., U.S.Code Cong. & Admin.News, p. 5008 (1958). Construing this language of the committee report in *Perry v. Commissioner*, 54 T.C. 1293, 1296, aff'd per curiam 71–2 U.S.T.C., ¶ 9502 (8th Cir. 1971), the Tax Court said:

. . . [I]t appears to us that, given its most familiar meaning, [citation omitted], the use of the word "investment" reveals an intent, on the part of the committee, to limit the applicability of section 1374(c)(2)(B) to the *actual economic outlay* of the shareholder in question.

The rule which we reach by this interpretation is no more than a restatement of the well-settled maxim which requires that "Before any deduction is allowable there must have occurred some transaction which when fully consummated left the taxpayer poorer in a material sense." (Footnote omitted; emphasis added)

---

1. In the Tax Court the taxpayers argued that the transaction was effectuated to provide money for Lubbock's expansion, but the Tax Court specifically found that at the time of the exchange of notes Lubbock was not actively engaged in an expansion program for which it needed the funds previously loaned to Albuquerque.

Similarly, in *Wheat v. United States*, 353 F.Supp. 720, 722 (S.D.Tex.1973), the court concluded that the concept of adjusted basis of indebtedness embodied in the statute "was intended to be comparable to *actual capital investment* by the shareholders." We too believe that the legislative purpose for the enactment of section 1374(c)(2)(B) will best be served if we focus upon the shareholders' alleged investment in the corporation.

Courts have uniformly held that when a shareholder merely guarantees a debt of his Subchapter S corporation there is no increase in his adjusted basis in the corporation's indebtedness to him within the meaning of section 1374(c)(2)(B). *Wheat v. United States, supra* ; *Neal v. United States*, 313 F.Supp. 393, 396 (C.D.Cal.1970); *Raynor v. Commissioner*, 50 T.C. 762 (1968); *Perry v. Commissioner*, 47 T.C. 159 (1966), *aff'd* 392 F.2d 458 (8th Cir. 1968). Likewise, in *Joe E. Borg*, 59 T.C. 257 (1968) it was held that a shareholder's execution of a surety agreement with respect to his Subchapter S corporation's debt did not increase the shareholder's basis in any corporate indebtedness to him within the meaning of section 1374(c)(2)(B). In *Raynor, supra*, the court stated the rule in the following manner:

> No form of indirect borrowing, be it guaranty, surety, accommodation, co-making, or otherwise, gives rise to indebtedness from the corporation to the share-

holders until and unless the shareholders pay part or all of the obligation. Prior to that crucial act, "liability" may exist, but not debt to the shareholders.

50 T.C. at 770–71.

The surety or guarantor may never be called upon to pay the corporate debt; consequently, unless that eventuality transpires, he will not have increased the basis of his investment in the corporation. Of course, once he does pay the obligation of his Subchapter S corporation, the shareholder will have increased the adjusted basis of investment in his corporation, and a basis-giving indebtedness for purposes of section 1374(c)(2) will have arisen.

In the transaction at issue in this case, the taxpayers in 1967 merely exchanged demand notes between themselves and their wholly owned corporations; they advanced no funds to either Lubbock or Albuquerque. Neither at the time of the transaction, nor at any other time prior to or during 1969 was it clear that the taxpayers would ever make a demand upon themselves, through Lubbock, for payment of their note.[2] Hence, as in the guaranty situation, until they actually paid their debt to Lubbock in 1970 the taxpayers had made no additional investment in Albuquerque that would increase their adjusted basis in an indebtedness of Albuquerque to them within the meaning of section 1374(c)(2)(B).[3] Conse-

---

2. The taxpayers contend that this case falls within the scope of Internal Revenue Ruling 75–144, I.R.B. 1975–76, 19, which was issued subsequent to the decision of the Tax Court in this case. In the Revenue Ruling a shareholder had guaranteed his Subchapter S corporation's obligation to a bank. Subsequently the bank accepted the shareholder's note in satisfaction of his guaranty and relieved the corporation of its liability on the original note. The shareholder made no payment on his note until the year following the substitution, but he attempted to increase his basis for the year in which the substitution occurred. The IRS ruled that the corporation became indebted to the shareholder within the meaning of section 1374(c)(2)(B) in the year the substitution was made, notwithstanding the fact that he made no payment on the note that year.

The taxpayers' reliance on this ruling is misplaced. In the first place, a taxpayer may not rely on an advance revenue ruling issued to

another taxpayer. 26 C.F.R. 601.201(*l*)(1). Secondly, we think the factual situation in the ruling is significantly different and warrants disparate treatment. In the ruling the obligee on the shareholder's note was an outsider, a bank, which stood ready to enforce the obligation. Hence it was clear at the time the substitution occurred that at some future date payment would be required. Here, by contrast, the obligee on the taxpayers' demand note was their own wholly-owned corporation. It was not clear from the outset that the taxpayers would ever make a demand upon themselves (through Lubbock) for payment of the note; consequently, at the time of the transaction the taxpayers had not made the requisite additional investment in their corporation.

3. The government admits that in 1970, upon payment of the note, the taxpayers increased their adjusted basis in Albuquerque's indebtedness. If not prohibited from doing so for other

quently, we agree with the Tax Court that in the circumstances of this case the signing of taxpayers' note to Lubbock and Albuquerque's note to the taxpayers did not give the taxpayer an adjusted basis in an indebtedness within the meaning of section 1374(c)(2)(B).

AFFIRMED.

reasons the taxpayers would thereafter be able to deduct their shares of Albuquerque's net operating losses until they had exhausted this basis.