JERRY L. SHEBESTER and SUSAN J. SHEBESTER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shebester v. Commissioner
Docket No. 25580-82.
United States Tax Court
T.C. Memo 1987-246; 1987 Tax Ct. Memo LEXIS 243; 53 T.C.M. (CCH) 824; T.C.M. (RIA) 87246; May 11, 1987. Timothy M. Larason, for the petitioners. LeRoy D. Boyer, for the respondent. COHEN
MEMORANDUM OPINION COHEN, Judge: Respondent determined a deficiency of $54,758.72 in petitioners' 1979 Federal income tax. After concessions, the issue for decision is to what extent petitioners are entitled to deduct their share of the net operating loss sustained by A & L, Inc., an electing small business corporation, during *244 its taxable year ended October 31, 1979. Background
Petitioners Jerry L. Shebester (petitioner) and Susan J. Shebester timely filed a joint Federal income tax return for 1979. Petitioners resided in Oklahoma City, Oklahoma, when their petition was filed. Their case was submitted fully stipulated, and the facts set forth in the stipulations are incorporated in our findings by this reference. Petitioner was majority shareholder in two electing small business corporations, A & L, Inc. (A & L) and Shebester of Hennessey, Inc. (Hennessey). Petitioner owned 80.85 percent of the stock of A & L at the close of A & L's taxable year ended October 31, 1979. Petitioner owned 98 percent of the stock of Hennessey at the close of Hennessey's taxable year ended December 31, 1979. On and prior to September 30, 1979, the books of each corporation reflected a debt of at least $350,000 owed by A & L to Hennessey. The parties have stipulated that, were he to testify in this case, petitioner would state that the transactions giving rise to A & L's debt to Hennessey were intended by the parties to be dividends to petitioner from Hennessey and loans by him to A & L. On September 30, 1979, petitioner *245 assumed the liability of A & L to Hennessey in return for a promissory note from A & L in the amount of $350,000. The promissory note was payable on or before January 2, 1981 and provided for accrual of interest at the rate of 15 percent per annum. A & L recorded this transaction as of September 20, 1979, as follows: Debit
Credit
Accounts Payable - Shebester
$350,000
of Hennessey, Inc.
Note Pay - J. Shebester
$350,000
to Transfer A/P from
Shebester of Hennessey,
Inc. to J. Shebester
As of September 30, 1979, entries were made on the books of Hennessey as follows: Debit
Credit
Drawing Account - J. Shebester
$350,000
Accounts Rec. - A & L, Inc.
$350,000
To transfer accounts rec.
to J. Shebester
At the end of the its taxable year Hennessey closed petitioner's drawing account by debiting his undistributed taxable income account. Petitioner's drawing account was credited by $350,000 in order to close out the $350,000 debited to that account on September 30, 1979. Hennessey reported taxable income of $775,994 for its taxable year ended December 31, 1979. Petitioner reported $760,778 as his distributive *246 share of Hennessey's taxable income. The amount reported by petitioner included the $350,000 of undistributed income used to eliminate the charge to petitioner's drawing account that resulted from his assumption of A & L's liability to Hennessey. A & L reported a loss of $357,220 for its fiscal year ended October 31, 1979. Petitioner reported $291,829 as his distributive share of A & L's loss. In a notice of deficiency, respondent disallowed $285,446.45 of petitioner's $291,829 deduction for his distributive share of loss attributable to an electing small business corporation. Respondent identified the corporation as Hennessey, not A & L. By Amendment to Answer, respondent alleged that A & L was the corporation to which the loss was in fact attributable. In a Memorandum Sur Order denying petitioners' Motion for More Definite Statement, we determined that respondent's allegation raised in the Amendment to Answer is a new matter upon which respondent bears the burden of proof. Respondent seeks to disallow petitioner's deduction to the extent that it exceeded petitioner's adjusted basis in A & L. Respondent computed petitioner's adjusted basis in his A & L shares and his *247 adjusted basis in A & L's indebtedness to him as follows: Capital stock
$ 500.00
Paid-in or capital surplus
2,225.00
Undistributed taxable income
5,130.00
$7,855.00
X 81%
Petitioner's share-
holder interest in
A & L, Inc.
(Rounded to 81%)
$6,362.55
Discussion
Section 1374(b)[1] provides that a shareholder of an electing small business corporation may deduct his pro rata share of the corporation's net operating loss. Section 1374(c)(2) limits such a deduction to the sum of (1) the adjusted basis of the shareholder's stock in the corporation and (2) the adjusted basis of any indebtedness of the corporation to the shareholder. [2]
*248 Two transactions may be distilled from the accounts of petitioner's electing small business corporations: (1) a transfer of $350,000 from Hennessey to A & L and (2) petitioner's apparent assumption of A & L's liability to Hennessey. Petitioner contends that the first transaction, in form a series of loans from Hennessey to A & L, was in substance a series of dividends from Hennessey to petitioner followed by loans from petitioner to A & L. Petitioner also argues that Hennessey's charge to his drawing account, a key element of the second transaction, represents an actual economic outlay entitling him to increase his basis in A & L. Petitioner maintains that each of these transactions increased his investment in A & L. In Perry v. Commissioner,54 T.C. 1293, 1296 (1970), we noted the use of the word "investment" in the legislative history of section 1374(c)(2) and concluded that the indebtedness referred to in section 1374(c)(2)(B) must represent an "actual economic outlay of the shareholder in question." See *249 Pike v. Commissioner,78 T.C. 822, 839-840 (1982), affd. without published opinion 732 F.2d 164 (9th Cir. 1984); Underwood v. Commissioner,63 T.C. 468, 476-477 (1975), affd. 535 F.2d 309 (5th Cir. 1976). Petitioner may thus augment his basis in A & L, and secure a deduction for his full share of the company's net operating loss, only if either of the two transactions left him "poorer in a material sense." Perry v. Commissioner,54 T.C. at 1296. The First Transaction
We conclude that the first transaction did not represent an actual economic outlay entitling petitioner to increase his basis in A & L. Petitioner argues that A & L's indebtedness to Hennessey was in substance an indebtedness to petitioner. He may not so easily disavow the form of this transaction. In Prashker v. Commissioner,59 T.C. 172, 176 (1972), we observed that "The 'benefits' of an electing corporation's net operating loss deduction are strictly limited to the shareholders of the corporation." (Emphasis in original.) It is well settled that, under section 1374(c)(2)(B), an electing corporation's indebtedness *250 must run directly to the corporation's shareholders. Frankel v. Commissioner,61 T.C. 343 (1973), affd. without published opinion 506 F.2d 1051 (3d Cir. 1974); Prashker v. Commissioner,supra.Consequently, an electing corporation's indebtedness to an entity in which its shareholders have substantial or even identical ownership interests does not constitute an indebtedness of the corporation to the shareholders. [3] In Prashker v. Commissioner,supra, we held that an electing corporation's indebtedness to an estate did not augment the basis of a shareholder who also happened to be the estate's sole beneficiary. In Frankel v. Commissioner,supra, we concluded that an electing corporation's indebtedness to its shareholders' partnership did not qualify as indebtedness to the shareholders even though they held proportionately identical ownership interests in both entities. We stated: It is not the proportionability of ownership interests that is determinative. Rather, it is the crucial fact that the partnership made the loan and the partners, to the extent of their partnership interest, *251 participated therein. If the corporation should default on the loan its effects will be felt by the partners as creditors rather than the partners as shareholders. The existence of the partnership cannot be ignored here even though the partners were simultaneously shareholders in the subchapter S corporation. If the partners had directly loaned the money to the subchapter S corporation or treated it as an addition to capital, the result would be different. See Ruth M. Prashker,supra at 176. [61 T.C. at 348.] Petitioner maintains that respondent must produce evidence indicating that A & L's indebtedness did not run directly to petitioner. We disagree. Rule 91(e), Tax Court Rules of Practice and Procedure, provides that a stipulation shall be treated, to the extent of its terms, as a conclusive admission *252 by the parties. Thus, if the stipulated facts support respondent's contention, respondent need not offer additional evidence. See Kreps v. Commissioner,351 F.2d 1, 6 (2d Cir. 1965), affg. 42 T.C. 660 (1964); Jaffee v. Commissioner,18 B.T.A. 372, 373 (1929), affd. on other grounds 45 F.2d 679 (2d Cir. 1931). We have weighed all of the evidence before us, including the stipulated facts, and we conclude that the parties' stipulation as to the form of the transaction satisfies respondent's burden of proof. If A & L were to default on Hennessey's loans, the effects of the default would be felt by petitioner as a shareholder of Hennessey rather than as a creditor of A & L. See Frankel v. Commissioner,supra.
Petitioner's characterization of the first transaction is not corroborated by any contemporaneous evidence. The record does not contain minutes of the Hennessey board of directors or any other documentation of a dividend, nor does the record contain promissory notes for any debt of A & L to petitioner incurred before September 30, 1979. *253 The only evidence consistent with petitioner's claim is his general statement concerning his intent. This evidence, alone, is not "strong proof" sufficient to overcome the form selected by petitioner. See Coleman v. Commissioner,87 T.C. 178, 202 (1986). [4] Petitioner consequently has failed to persuade us that the first transaction, in form a series of loans from Hennessey to A & L, was in substance a series of dividends from Hennessey to petitioner followed by loans from petitioner to A & L.
*254 The Second Transaction
We also conclude that Hennessey's charge to petitioner's drawing account, a key element of petitioner's apparent assumption of A & L's liability, was not an actual economic outlay entitling petitioner to increase his basis in A & L. This case is factually similar to Underwood v. Commissioner,supra. In Underwood, as in the case before us, the taxpayer controlled two electing corporations. The net operating losses of one corporation exceeded the taxpayer's basis in that corporation's stock. The taxpayer's profitable corporation had advanced substantial funds to the loss corporation in previous years. Acting on the advice of his accountant, the taxpayer gave a note in the amount of these funds to the profitable corporation, the profitable corporation canceled the debt of the loss corporation, and the loss corporation gave its note to the taxpayer. In Underwood, we observed that the facts of that case were similar in principle to a shareholder's guarantee of the indebtedness of an electing small business corporation. *255 Underwood v. Commissioner,63 T.C. at 475-476. We stated that: In a long list of cases, it has been held that basis-giving indebtedness for the purposes of section 1374(c)(2)(B) does not arise where a shareholder merely guarantees a subchapter S corporation's debt, William H. Perry,supra at 163; Milton T. Raynor,50 T.C. 762, 770-771 (1968); Wheat v. United States,353 F. Supp. 720, 722 (S.D. Tex. 1973); Neal v. United States,313 F. Supp. 393, 396 (C.D. Cal. 1970), or executes a surety agreement with respect to the corporation's debt. Joe E. Borg,50 T.C. 257, 264-265 (1968). Only after the guarantor or surety performs on his contract of guaranty does the debtor's liability to the creditor become an indebtedness to the guarantor. Putnam v. Commissioner,352 U.S. 82, 85 (1956); William H. Perry,supra at 164. We concluded that "the only effect of [the] new notes was to shift the liabilities for the prior loans," and we held that the taxpayer thus did not have an adjusted basis in the loss corporation's note within the meaning of section 1374(c)(2)(B). The *256 Court of Appeals for the Fifth Circuit expressly agreed with our reasoning. Underwood v. Commissioner,535 F.2d 309, 311-312 (5th Cir. 1976), affg. 63 T.C. 468 (1975). Under all the circumstances of this case, we conclude that petitioner's bookkeeping maneuvers merely shifted, on paper, the liability for prior loans. Hennessey's debit to petitioner's drawing account, and its subsequent credit to that account and debit to petitioner's undistributed taxable income account, do not reflect a current economic outlay entitling petitioner to increase his basis in A & L. Although the entries in Hennessey's books technically reduced petitioner's book equity, such entries could not, absent liquidation of Hennessey, leave petitioner "poorer in a material sense." See Perry v. Commissioner,54 T.C. at 1296. Moreover, because petitioner had complete control over when and under what circumstances Hennessey would liquidate, and because the record is devoid of any evidence suggesting that petitioner would cause Hennessey to liquidate in the foreseeable future, we conclude that it was unlikely that petitioner would ever make an economic outlay in *257 payment of A & L's debt. See Underwood v. Commissioner,535 F.2d at 312 n.2; see also Brown v. Commissioner706 F.2d 755, 756 (6th Cir. 1983). To reflect the foregoing, Decision will entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. ↩
2. SEC. 1374. CORPORATION NET OPERATING LOSS ALLOWED TO SHAREHOLDERS. (a) General Rule. -- A net operating loss of an electing small business corporation for any taxable year shall be allowed as a deduction from gross income of the shareholders of such corporation in the manner and to the extent set forth in this section. * * * (c)(2) Limitation. -- A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of -- (A) the adjusted basis * * * of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation * * * and (B) the adjusted basis * * * of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation * * *.↩
3. On facts similar to those presented here, we have held that the shareholders of an electing corporation could not increase their basis in the corporation to the extent of its indebtedness to another corporation in which the shareholders held proportionally identical interests. Burnstein v. Commissioner,T.C. Memo. 1984-74↩.
4. Taxpayers in similar circumstances have been treated similarly. In Burnstein v. Commissioner,supra, the taxpayers caused one controlled subchapter S corporation to loan funds to another: Petitioners rely heavily on Burnstein's testimony that when they caused Concare to transfer money to National, they intended and believed they were actually transferring their own money. Petitioners also point out that since Concare had no financial interest in National, the funds were obviously advanced on behalf of the shareholders. Thus, they argue, that made the necessary economic outlay which allows them to acquire a basis in the indebtedness from National. Petitioners' argument is without merit and contrary to the judicial interpretation of section 1374(c)(2)(B). Petitioners' view that the funds transferred by their corporation on their behalf were actually their own would effectively disregard Concare as a separate entity. Despite many "pass-through" privileges and other tax benefits enjoyed by shareholders of subchapter S corporations, the corporate entity still must be respected. * * * For the debt to be included in the shareholder's basis under section 1374(c)(2)(B), the shareholder must make an actual economic outlay and directly incur the indebtedness. The shareholders' belief that they were actually incurring the risk is irrelevant. * * * [Citations omitted. Emphasis supplied. 47 T.C.M. 1100↩ at 1104, 53 P-H Memo par. 84,074 at 286-84.]