T.C. Memo. 1996-429

UNITED STATES TAX COURT

ARUN AND ASMITA BHATIA, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21830-94.                    Filed September 24, 1996.

Barry L. Gardiner, for petitioners.

Paul N. Schneiderman, for respondent.

MEMORANDUM OPINION

TANNENWALD, Judge:  Respondent determined a deficiency in
petitioners' 1987 Federal income tax in the amount of $138,290
plus an addition to tax of $34,573 under section 6661.[1]

---

[1]  All section references are to the Internal Revenue Code in
effect for the year in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

The issues for decision are whether petitioners:  (1) Are entitled to a passthrough loss from a wholly owned S corporation, and (2) are liable for an addition to tax pursuant to section 6661 for a substantial understatement of tax.

All of the facts have been stipulated.  The stipulation of facts and attached exhibits are incorporated herein by this reference.

At the time their petition was filed, petitioners resided in New York, New York.

During 1987, Arun Bhatia (petitioner) was in the construction business and conducted his business through at least two entities, including Arun Bhatia Development Corporation (ABDC) and Ganbir Construction Corporation (GCC), both of which had elected subchapter S status for 1987.   Petitioner was the sole shareholder and president of ABDC and GCC during 1987.  At the beginning of 1987, petitioner's basis in ABDC was zero.

On October 26, 1987, petitioner executed a document captioned "Assumption Agreement" (assumption agreement), which stated in part:

> WHEREAS, BHATIA [petitioner] is the sole shareholder of ABDC; and,
>
> WHEREAS, ABDC is currently indebted to GANBIR CONSTRUCTION CORPORATION ("GCC") in the amount of $244,500.00; and,
>
> WHEREAS, BHATIA desires to assume ABDC's obligations to GCC so as to improve ABDC's capital structure;

NOW, THEREFORE, in consideration of her [sic] premises [sic] and of the mutual covenants and agreements set forth herein, BHATIA makes the following undertakings and agreements:

1. BHATIA hereby undertakes, assumes and agrees to perform, pay or discharge when due, to the extent not heretofore performed, paid or discharged, all obligations of ABDC to GCC in the amount of $244,500.00.

2. It is expressly understood that BHATIA is not hereby assuming, or agreeing to perform, pay or discharge any liability of ABDC other than the obligations specifically identified [sic] in paragraph 1 hereinabove.

3. The assumption of the obligations set forth in this ASSUMPTION AGREEMENT shall be construed as a valid obligation of ABDC to BHATIA in the amount of the obligation assumed.

45[sic]  This ASSUMPTION AGREEMENT shall be interpreted in accordance of [sic] with the Laws of the State of New York and shall bind and enure to the benefit of the parties, their heirs, successors and assigns.

Petitioner signed the assumption agreement in his individual capacity, as president of ABDC, and as president of GCC.   In connection with the recited obligations of ABDC to GCC, petitioner to GCC, and ABDC to petitioner, the record contains no evidence that any promissory notes were issued, collateral pledged, or interest rate or repayment schedule established. No payments were ever made by petitioner to GCC pursuant to the obligation recited in the assumption agreement.

ABDC reported a net operating loss in the amount of $169,602 on its 1987 Form 1120S, U.S. Income Tax Return for an S Corporation.  GCC reported net income of $256,572 on its 1987

Form 1120S. The following information was contained on GCC's Forms 1120S for 1987 and 1988, respectively:

| Year | Item | Beginning Balance | Ending Balance |
|------|------|-------------------|----------------|
| 1987 | Trade notes and accounts receivable | $476,374 | $ 807,551 |
| | Accumulated adjustments account | (125,063) | 108,699 |
| 1988 | Trade notes and accounts receivable | 563,051 | 1,849,370 |
| | Accumulated adjustments account | (135,801) | (172,891) |

On Schedule E of their 1987 Federal income tax return, petitioners: (1) Claimed a $169,602 passthrough loss from ABDC, and (2) $241,424 of passthrough income from GCC.

Passthrough Loss

Section 1366(a) requires a taxpayer to take into account the pro rata share of income, losses, and deductions of an S corporation of which the taxpayer is a shareholder. The losses and deductions taken into account are limited as follows:

> Sec. 1366(d). Special Rules for Losses and Deductions.--
>
> (1) Cannot exceed shareholder's basis in stock and debt.--The aggregate amount of losses and deductions taken into account by a shareholder under subsection (a) for any taxable year shall not exceed the sum of--
>
> (A) the adjusted basis of the shareholder's stock in the S corporation * * *, and
>
> (B) the shareholder's adjusted basis of any indebtedness of the S corporation to the shareholder * * *.

The share of any S corporation loss in excess of the taxpayer's adjusted basis, under section 1366(d)(1)(A) and (B), is carried over indefinitely to the succeeding years.  Sec. 1366(d)(2).

Prior cases have established certain principles in respect of the application of the indebtedness limitation under section 1366(d)(1)(B).  See Eustice & Kuntz, Federal Income Taxation of S Corporations, sec. 9.05 at 9-47 through 9-54 (3d ed. 1993).[2] Most important to our analysis is the requirement that there be an actual economic outlay by the taxpayer.  See Underwood v. Commissioner, 535 F.2d 309 (5th Cir. 1976), affg. 63 T.C. 468 (1975); Hitchins v. Commissioner, 103 T.C. 711 (1994).[3]

Petitioner contends that, by entering into the assumption agreement, he is entitled to increase his basis in ABDC in an amount corresponding to the amount of the obligation he assumed. Respondent counters that the assumption agreement was a "scheme" by which petitioner attempted to increase his basis in ABDC in order to enable him to utilize its net operating losses and that petitioner did not make the economic outlay required by the decided cases.  Consequently, respondent asserts that petitioner

---

[2]  Many of the cases involve tax years beginning prior to Dec. 31, 1982, to which sec. 1374(c)(2) applied.  Sec. 1366(d)(1) replaced sec. 1374(c)(2) without significant change.

[3]  See also Wilson v. Commissioner, T.C. Memo. 1991-544; Griffith v. Commissioner, T.C. Memo. 1988-445; Shebester v. Commissioner, T.C. Memo. 1987-246.

is precluded from taking the ABDC net operating loss in 1987 because his basis in ABDC was zero.

In Underwood v. Commissioner, supra, the taxpayers were the sole shareholders of two corporations engaged in the retail barbecue business.  One of the corporations, an S corporation, was consistently unprofitable.  The other corporation, a C corporation, was consistently profitable.  Over the course of approximately 22 months, the C corporation had made loans totaling $110,000 to the S corporation, which were evidenced by a series of promissory notes.  The taxpayers' accountant informed the taxpayers that their losses from the S corporation would exceed their adjusted basis in the S corporation and advised them to increase their basis in the S corporation so they could utilize the losses.  In an arrangement, not unlike the one herein, the C corporation surrendered the notes of the S corporation to the S corporation, the taxpayers substituted their personal note to the C corporation, and the S corporation gave its demand note to the taxpayers.  The Court of Appeals for the Fifth Circuit, affirming the decision of this Court, determined that the taxpayers were not entitled to increase their basis in the S corporation as a result of the arrangement.

In reaching its decision, the Court of Appeals for the Fifth Circuit discussed the focus of Congress at the time section 1374(c)(2)(B), the predecessor to section 1366(d)(1), see supra

note 2, was enacted, referring initially to the following statement in the legislative history:

> The amount of the net operating loss apportioned to any shareholder pursuant to the above rule is limited under section 1374(c)(2) to the adjusted basis of the shareholder's <u>investment</u> in the corporation; that is, to the adjusted basis of the stock in the corporation owned by the shareholder and the adjusted basis of any indebtedness of the corporation to the shareholder. * * * [S. Rept. 1983, 85th Cong., 2d Sess. (1958), 1958-3 C.B. 922, 1141; emphasis added.]

The Court of Appeals then went on to conclude:

> In the transaction at issue in this case, the taxpayers in 1967 merely exchanged demand notes between themselves and their wholly owned corporation; they advanced no funds to either Lubbock or Albuquerque. Neither at the time of the transaction, nor at any other time prior to or during 1969 was it clear that the taxpayers would ever make a demand upon themselves, through Lubbock, for payment of their note. Hence, as in the guaranty situation, until they actually paid their debt to Lubbock in 1970 the taxpayers had made no additional investment in Albuquerque that would increase their adjusted basis in an indebtedness of Albuquerque to them within the meaning of section 1374(c)(2)(B). * * * [<u>Underwood v. Commissioner</u>, 535 F.2d at 312; fn. refs. omitted.]

Petitioners attempt to distinguish the instant situation from that which existed in <u>Underwood</u>, by claiming that subsequent "distributions, extinguishments of debt, reductions in tax bases * * * [and] payments of additional taxes in subsequent years" that exist in this case did not exist in <u>Underwood</u>. This argument focuses on the reduction in GCC's trade notes and accounts receivables and accumulated adjustment accounts shown on its 1987 and 1988 Federal income tax returns and on the parties'

stipulation that petitioner, were he to testify in this case, would state that, in 1988, he reduced his basis in GCC by $244,500. Petitioners assert that this reduction prevented them from taking advantage of deductions in that amount in respect of losses of AB 89 Street Corp., an S corporation into which GCC was merged in 1990, and which, as reflected in the stipulated tax returns, had net operating losses for 1989 through 1992.

Our evaluation of this argument takes into account the rule that submitting a case fully stipulated does not lessen the need for petitioners to carry their burden of proof. Borchers v. Commissioner, 95 T.C. 82 (1990), affd. 943 F.2d 22 (8th Cir. 1991). In this connection, we note that, aside from the stipulated assumption agreement, the stipulated tax returns, and the stipulated testimony of petitioner, there is no evidence in respect of the actual existence of an indebtedness of ABDC to GCC or of the amounts or terms of that indebtedness as to interest or time of repayment or of petitioner's basis in GCC before or after the claimed reduction.

The evidence in support of petitioners' position is skimpy at best. Tax returns are not proof of the statements contained therein. Lawinger v. Commissioner, 103 T.C. 428, 438 (1994). Nor do we consider the stipulated conclusory statement by the taxpayer sufficient to carry the day in respect of the bookkeeping entries of GCC. Shebester v. Commissioner, T.C. Memo. 1987-246. In Shebester, the taxpayer was a majority

shareholder in two S corporations, A & L and Hennessey. In late 1979, the taxpayer assumed the liability of A & L to Hennessey. A & L's books were adjusted with a debit to accounts payable and a credit to notes payable. Hennessey's books were adjusted with a debit to the taxpayer's drawing account and a credit to accounts receivable. At the end of the year, the taxpayer's drawing account was closed by debiting the taxpayer's undistributed taxable income account in an amount including the amount of the debt assumed. We concluded that the charge to the taxpayer's drawing account was not an actual economic outlay stating:

> [The taxpayer's] bookkeeping maneuvers merely shifted, on paper, the liability for prior loans. Hennessey's debit to * * * [the taxpayer's] drawing account, and its subsequent credit to that account and debit to * * * [the taxpayer's] undistributed taxable income account, do not reflect a current economic outlay entitling * * * [the taxpayer] to increase his basis in A & L. Although the entries in Hennessey's books technically reduced * * * [the taxpayer's] book equity, such entries could not, absent liquidation of Hennessey, leave * * * [the taxpayer] "poorer in a material sense." * * * [Shebester v. Commissioner, supra; citation omitted.[4]]

Petitioners' reliance on Rev. Rul. 75-144, 1975-1 C.B. 277, is misplaced. The Court of Appeals in Underwood v. Commissioner, 535 F.2d 309 (5th Cir. 1976), gave the ruling short shrift as applied to situations such as is involved herein stating:

---

[4] We took the same view in Wilson v. Commissioner, T.C. Memo. 1991-544, and Burnstein v. Commissioner, T.C. Memo. 1984-74.

> In the ruling [Rev. Rul. 75-144] the obligee on the shareholder's note was an outsider, a bank, which stood ready to enforce the obligation. Hence it was clear at the time the substitution occurred that at some future date payment would be required. Here, by contrast, the obligee on the taxpayers' demand note was their own wholly-owned corporation. * * * [Underwood v. Commissioner, 535 F.2d at 312 n.2.[5]]

Petitioners contend that our approach to cases involving factual situations, such as is involved herein, unjustifiably singles out closely held S corporations for adverse tax treatment. We recognize that the decided cases seem to place a heavy burden on shareholders who seek to rearrange the indebtedness of related closely held S corporations. But close scrutiny of transactions between taxpayers and their controlled corporations has been the order of the day for a long period of time and applied in a myriad of tax cases too numerous to cite. Having noted the significance of the close relationship where S corporations are involved, we hasten to add that the existence of such a relationship is not necessarily fatal if other elements are present which clearly establish the bona fides of the transactions and their economic impact. See Hitchins v. Commissioner, 103 T.C. at 718[6]; see also Looney, "TAM 9403003:

---

[5] See also Gilday v. Commissioner, T.C. Memo. 1982-242. We note that, in any event, revenue rulings are not entitled to any special deference. E.g., Underwood v. Commissioner, 535 F.2d 309, 312 n.2 (5th Cir. 1976), affg. 63 T.C. 468 (1975); Halliburton Co. v. Commissioner, 100 T.C. 216, 232 (1993), affd. without published opinion 25 F.3d 1043 (5th Cir. 1994).

[6] We note that in Hitchins v. Commissioner, 103 T.C. 711 (1994),
(continued...)

The Service's Not-So-Kind-and-Gentle-Approach to Loan Restructurings Between Related Entities," 6 Journal of S Corporation Taxation 297 (1995).  Conceivably, a trial might have provided the necessary flesh on the bones of the transactions involved herein.  But petitioners chose to submit this case fully stipulated and must suffer the consequences of their choice.  Cf. King's Court Mobile Home Park v. Commissioner, 98 T.C. 511, 516 (1992).

Section 6661 Addition to Tax

Section 6661(a) provides for an addition to tax on underpayments attributable to a substantial understatement of income tax.  Section 6661(b)(2)(A) defines the term "understatement" as the excess of the amount of tax required to be shown on the return for the taxable year over the amount shown on the return.  An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6661(b)(1)(A).  Our denial of petitioner's passthrough loss from ABDC results in an understatement greater than $5,000.

The section 6661 addition to tax is not applicable, however, if there was substantial authority for petitioners' treatment of

---

[6](...continued)
the taxpayer-shareholders' funds had found their way to the S corporation to whom the taxpayer-shareholder became indebted, albeit we were unwilling to treat those funds as having been initially advanced on his behalf.

the items in issue or if the relevant facts relating to the tax treatment were adequately disclosed on the return.  Sec. 6661(b)(2)(B)(i) and (ii).

"Substantial authority" requires that, when the facts and authorities are analyzed with respect to the petitioners' case, the weight of the authorities that support the petitioners' position should be substantial when compared with those supporting the contrary position.  H. Conf. Rept. 97-760 at 575 (1982), 1982-2 C.B. 600, 650; see Schirmer v. Commissioner, 89 T.C. 277, 283-284 (1987).  A position that is arguable but fairly unlikely to prevail in court would not meet the substantial authority standard.  Sec. 1.6661-3(a)(2), Income Tax Regs.

Petitioners argue that there was substantial authority for their position, in particular Rev. Rul. 75-144, supra, and, therefore, the section 6661 addition to tax should not apply.  At the time petitioners filed their return, however, Underwood v. Commissioner, supra, had been decided by the Court of Appeals for the Fifth Circuit, affirming our decision in that case, and we had also decided Gilday v. Commissioner, T.C. Memo. 1982-242. Both of these cases ruled in favor of respondent and clearly indicated the inapplicability of that ruling to situations such as are involved herein.  See supra pp. 9-10.  Thus Rev. Rul. 75-144 can afford no comfort to petitioners in terms of "substantial authority", to say nothing of the fact that as our previous

discussion reflects, the decided cases have rejected the position maintained by petitioner herein.

Petitioners also argue that they adequately disclosed the relevant facts relating to the transactions on their return. Two types of disclosure are provided for: (1) Disclosure in statements attached to the return, sec. 1.6661-4(b), Income Tax Regs., and (2) disclosure on the return, sec. 1.6661-4(c), Income Tax Regs. Petitioners did not attach any statement to their return; therefore, section 1.6661-4(b), Income Tax Regs., is not applicable.

Taxpayers can meet the requirements of adequate disclosure by providing on the return sufficient information to enable respondent to identify the potential controversy involved. Crown Income Charitable Fund v. Commissioner, 98 T.C. 327, 340 (1992), affd. 8 F.3d 571 (7th Cir. 1993); Schirmer v. Commissioner, supra at 285-286. Petitioners did not indicate anywhere on their return for 1987 that they had entered into the assumption agreement or the nature of the underlying indebtedness. Petitioners simply reported the losses of ABDC and the income of GCC. This, without more, does not amount to sufficient information to meet the adequate disclosure standard. See Schirmer v. Commissioner, supra at 286.[7]

---

[7] See also Wilson v. Commissioner, T.C. Memo. 1991-544, where we sustained respondent's determination under sec. 6661 on the basis of lack of disclosure and lack of substantial authority.

In sum, we hold that petitioners' assertions in respect of basis under section 1366(d)(1)(B) and liability for the addition to tax under section 6661 should be rejected and respondent's determinations sustained.

To reflect the foregoing and to take into account other possible adjustments,

<u>Decision will be entered under Rule 155</u>.