[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14439
Non-Argument Calendar
_____

Agency No. 029495-14

RUPERT E. PHILLIPS,
SANDRA K. PHILLIPS,

Petitioners - Appellants,

versus

COMMISSIONER OF
INTERNAL REVENUE,

Respondent - Appellee.

_____

Petition for Review of a Decision
of the U.S. Tax Court

_____

(May 17, 2018)

Before WILSON, NEWSOM, and FAY, Circuit Judges.

PER CURIAM:

Appellants Rupert and Sandra Phillips were shareholders in Olson & Associates, a real estate development entity.  The Phillipses, among others, guaranteed loans made to the corporation.  When Olson defaulted on its loans, the third-party lenders sued, and the Phillipses were found jointly and severally liable, along with the other guarantors and the corporation itself, for the debt.  The Phillipses have yet to make a payment towards these judgments.  On subsequent tax returns, however, the Phillipses took the position that the entry of these judgments alone entitled them to an increased basis in Olson, along with the tax deduction that accompanies such an increase.  The IRS, and ultimately the Tax Court, disagreed, and the Phillipses appealed.  For the reasons following, we AFFIRM the judgment of the Tax Court.

## I

The facts of this case are not in dispute.  Rupert and Sandra Phillips were married and filed joint tax returns for the years at issue in this appeal.  Sandra Phillips was a 50-percent shareholder in Olson & Associates of NW Florida, Inc., an S corporation specializing in real estate development.  Rupert Phillips was an Olson employee.

2

Olson organized special-purpose entities for each of its projects, through which it obtained bank loans to finance land acquisition and project development. Each loan was secured by the assets of the relevant special-purpose entity, but was also guaranteed by Olson & Associates, its shareholders, and sometimes the shareholders' spouses.

Like many similar businesses, Olson was hit hard by the economic downturn in the latter half of the 2000s.  Many of its projects failed, and the loans financing them went into default.  Banks brought state court actions for repayment against the relevant special-entities and the loans' guarantors, including the Phillipses.  In 2008 and 2009, ten of these actions resulted in judgments ordering the sale of the property securing each loan and holding the corporate debtor and individual guarantors jointly and severally liable for the remaining debt.  As of yet, Ms. Phillips has not made any payments toward the judgments.

Despite having not yet contributed any money toward the payment of these judgments, the Phillipses claim that Sandra was entitled to increase her basis in her Olson stock by virtue of her liability alone.  Specifically, the Phillipses argue Sandra is entitled to additional basis of $1,553,360 for 2008 and $30,187,246 for 2009.

The tax court summarized the tax ramifications flowing from these claimed basis increases as follows.  On their 2008 amended return the Phillipses claimed a

3

Schedule E loss deduction of $3,890,069, an amount $1,455,421 larger than originally claimed on their 2008 return.  For 2009, the Phillipses claimed a Schedule E loss deduction of $10,518,948 and a Net Operating Loss of $10,349,265.  Under former Section 172(b)(1)(H), the Phillipses elected a five-year carryback period for this NOL, applying $4,625,394 against their 2004 tax liability and the remaining $5723,871 against their 2005 liability.  They filed for each of those two carryback years a Form 1045, Application for Tentative Refund, and received the refund they requested.

The Phillipses timely filed their 2010 return, on which they claimed a Schedule E deduction of $937,000 for the flowthrough loss from Olson, presumably relying on the unused portion of Mrs. Phillips' purported stock basis increase from 2009, generating an NOL for 2010 of $525,710, though the record does not establish whether or to which year the Phillipses carried this NOL.

After examining the Phillipses' returns for the years at issue, the IRS determined that Sandra was not entitled to any basis increase.  Accordingly, the IRS adjusted downward the Phillipses' 2008 flowthrough deduction from $3,890,069 to $2,378,899, and their 2009 flowthrough loss deduction from $10,518,948 to $2,006,205.  This left a 2009 NOL of only $1,672,363, which was exhausted after application against the Phillipses' 2004 tax liability, leaving no remaining NOL for application against their 2005 tax liability.  Finally, the IRS

4

eliminated the Phillipses' claimed 2010 flowthrough loss deduction in its entirety, obviously leaving no claimed NOL for that year.  The IRS then sent the Phillipses a notice of deficiency reflecting these adjustments, after which the Phillipses petitioned the Tax Court for review.  The Tax Court upheld the IRS adjustments, determining that an increase in basis required Mrs. Phillips to make an actual payment toward the judgments rendered against Olson.  The Phillipses now appeal, and contend that their basis in Olson increased by virtue of their liability for the state court judgments rendered against the corporation alone, regardless of if they have made any actual payments towards the debt.  Under our binding precedent, however, this is simply not the case.[1]

## II

Section 1366(a) of the Internal Revenue Code permits a shareholder of an S Corporation to deduct her *pro rata* share of any net operating loss sustained by the corporation.  This deduction is limited, however, to the sum of "the adjusted basis of the shareholder's stock in the S corporation" and "the shareholder's adjusted basis of any indebtedness of the S corporation to the shareholder."  I.R.C. §§ 1366(d)(1).  By its very terms, the indebtedness envisioned by Section 1366(d)(1) runs directly from the corporation to the shareholder.  When the payment of a corporation's debts are at issue, such direct indebtedness most often occurs,

---

[1] Our review of the tax court's decision is *de novo*.  *Sleiman v. Comm'r of Internal Revenue*, 187 F.3d 1352, 1358 (11th Cir. 1999).

5

obviously, when a shareholder "steps into a creditor's shoes" making an actual payment toward the corporation's debt. *See Perry v. Comm'r of Internal Revenue*, 47 T.C. 159, 164 (1966). Thus, as a general rule, this Circuit requires the shareholder make an "economic outlay"—an actual payment—toward the corporation's debt before she may claim an increase in her basis in the corporation's indebtedness. *Sleiman v. Comm'r of Internal Revenue*, 187 F.3d 1352, 1357 (11th Cir. 1999); *see also Underwood v. Comm'r of Internal Revenue*, 535 F.2d 309, 312 (5th Cir. 1976).[2] "The rule [reached] by this interpretation is no more than a restatement of the well-settled maxim which requires that '[b]efore any deduction is allowable there must have occurred some transaction which when fully consummated left the taxpayer poorer in a material sense.'" *Underwood*, 535 F.2d at 311.

It is true that we have previously held that this requirement—that a taxpayer guarantor make an actual payment towards a corporation's debt before she may recognize an increased basis—may not apply in all cases. *Selfe v. United States*, 778 F.2d 769, 772 (11th Cir. 1985). We have since clarified, however, that this requirement *does* apply unless "the facts demonstrate that, in substance, the shareholder has borrowed funds and subsequently advanced them to her

---

[2] Decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding on this Court. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

6

corporation." *Sleiman*, 187 F.3d at 1357.  Thus, the relevant inquiry is whether *at the loan's origination* the third-party lender views the corporation or the shareholder as the primary obligor for the debt.  In *Sleiman*, for example, we determined that the lender looked to the corporation as the primary obligor for repayment—rather than the taxpayer guarantor—in part because *at the creation of the loan* the corporation stood as a viable entity with valuable assets, and held that the shareholders' mere guaranty of the loans did not qualify them for an increased basis in the corporation.  *Id*.  Just so here.  As the Phillipses admit, each lender considered Olson & Associates, rather than the shareholder guarantors, as the primary obligor on the loans at origination.  The Phillipses' liability for the judgments rendered against Olson, therefore, does not "give[] rise to indebtedness from the corporation to [them] until and unless [they] pay part or all of the obligation."  *Underwood*, 535 F.2d at 312 (internal quotation and citation omitted).  "Prior to that crucial act, liability may exist, but not debt …."  *Id.*  And at least for purposes of this case, without debt there can be no increased basis.

The judgment of the Tax Court is **AFFIRMED.**

7