EDWARD A. AND GERALDINE WILSON, ANN WILSON, JOHN WILSON, AND MICHAEL JOSEPH WILSON, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wilson v. Commissioner
Docket No. 23521-88
United States Tax Court
T.C. Memo 1991-544; 1991 Tax Ct. Memo LEXIS 588; 62 T.C.M. (CCH) 1122; T.C.M. (RIA) 91544; October 31, 1991, Filed *588 Decision will be entered under Rule 155. Donald J. Jaret, for the petitioners. Kenneth A. Hochman, for the respondent. SWIFT, Judge. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined the following deficiencies in petitioners' Federal income taxes and additions to tax: Petitioners Edward A. and Geraldine Wilson
[1] Additions to Tax, Secs. Year
Deficiency
6651(a)(1)
6661
1983
$ 21,910
$ --
$ 6,490
1984
120,451
--
31,336
1985
54,305
16,618
14,138
Petitioner Ann Wilson
Additions to Tax, Sec.
Year
Deficiency
6661
1983
$ 9,876
$ 2,469
1984
12,084
3,021
1985
14,681
3,673
Petitioner John Wilson
Additions to Tax, Secs.
Year
Deficiency
6651(a)(1)
6661
1983
$ 12,040
$ --
$ 3,010
1984
7,758
--
2,037
1985
12,974
3,443
3,616
*589 Petitioner Michael Joseph Wilson
Additions to Tax, Sec.
Year
Deficiency
6661
1983
$ 8,829
$ 2,423
1984
9,930
2,482
1985
16,486
4,455
After settlement of some issues, the primary issue remaining for decision is whether certain loan receivables distributed to petitioners by a subchapter S corporation represented "indebtedness" under section 1366(d)(1)(B) for purposes of determining the bases of the shareholders in the stock and indebtedness of two other subchapter S corporations, which bases limit the amount of pass-through losses to which petitioners are entitled with respect to the two other subchapter S corporations. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners resided in Miami, Florida, at the time their petition was filed. During the years in issue, petitioners were the sole shareholders of two subchapter S corporations -- Wilcafe, Inc. (Wilcafe) and Miami Coffee Import Service, Inc. (Miami Coffee). Petitioners also were the controlling shareholders of another subchapter S corporation -- Global Jalousie Glass Manufacturers, Inc. (Global Jalousie). During the years in issue, Wilcafe was a profitable corporation *590 engaged in the business of importing coffee beans into the United States for sale to coffee roasting companies. Miami Coffee was engaged in the business of sorting and storing coffee beans. Global Jalousie was engaged in the business of the wholesale distribution of various types of glass products such as jalousie glass, sliding glass doors, and mirrors. Miami Coffee and Global Jalousie were both unprofitable during the years in issue. The offices of the three corporations were located in Miami, Florida. During 1982, 1983, and 1984, Wilcafe made various loans to Miami Coffee and to Global Jalousie. The total amount of the loans made each year by Wilcafe to Miami Coffee and to Global Jalousie is set forth below: Wilcafe Loans to
Wilcafe Loans to
Year
Miami Coffee
Global Jalousie
1982
--
$ 86,173
1983
$ 176,000
$ 113,000
1984
$ 137,600
$ 42,586
During December of each year, petitioner Edward A. Wilson (Edward) and his daughter petitioner Ann Wilson (Ann) met with the accountants for Wilcafe and discussed the projected yearend financial condition of each of the above corporations. Wilcafe's general policy was to distribute substantially all of its annual *591 profits to its shareholders. The distributions usually were made in cash. The yearend financial projections indicated that Miami Coffee and Global Jalousie would have losses for each year exceeding the tax bases of the shareholders of these corporations and that the shareholders would therefore be unable to claim, for Federal income tax purposes, their pro rata share of the losses of Miami Coffee and Global Jalousie in excess of their individual bases in the stock of those corporations. Petitioners, therefore, on behalf of Wilcafe and on the advice of their accountants, undertook certain actions in an attempt to increase the bases of the shareholders in the indebtedness of Miami Coffee and Global Jalousie by distributing to the shareholders the loans these two corporations had obtained from Wilcafe. A distribution was authorized for 1983 from Wilcafe to Wilcafe's shareholders consisting of cash and property. To be included in the distribution of property were loans owed to Wilcafe by Miami Coffee in the amount of $ 86,000. The loans were to be distributed on a pro rata basis to the shareholders of Wilcafe. In February or March of 1984, adjusting journal entries were made and *592 promissory notes were prepared by the accountants reflecting the loans owed to Wilcafe by Miami Coffee that were to be distributed to the Wilcafe shareholders. The promissory notes bore annual interest at 11 percent. The principal amounts of the promissory notes distributed to the shareholders were as follows: Edward and petitioner Geraldine Wilson (Geraldine) -- $ 138,294; Ann -- $ 17,050; petitioner John Wilson (John) -- $ 17,050; and petitioner Michael Joseph Wilson (Michael) -- $ 17,050. [2]
In December of 1984, a distribution from Wilcafe's profits of cash and property was again authorized. For the same reasons, included in the 1984 distribution of property were loans owed to Wilcafe by Miami Coffee in the principal *593 amount of $ 198,529 and loans owed to Wilcafe by Global Jalousie in the principal amount of $ 185,758. The loans were to be distributed on a pro rata basis to the shareholders of Wilcafe. In February or March of 1985, adjusting journal entries were made and promissory notes were prepared by the accountants reflecting the loans owed to Wilcafe by Miami Coffee and by Global Jalousie that were distributed to the Wilcafe shareholders. The promissory notes bore annual interest at 13 percent. The principal amounts of the notes of Miami Coffee distributed to each of Wilcafe's shareholders by Wilcafe were as follows: Edward and Geraldine -- $ 144,926; Ann -- $ 17,686; John -- $ 17,686; and Michael -- $ 17,686. The principal amount of the promissory notes of Global Jalousie distributed to Wilcafe's shareholders by Wilcafe, except Edward and Geraldine, was $ 19,910. On January 9, 1986, Global Jalousie deposited into its bank account separate $ 14,000 checks from Ann and from John. These checks were dated December 30, 1985, and December 31, 1985, respectively. The offices of Global Jalousie were closed from December 24, 1985, until January 2 or 6, 1986. On January 10, 1986, Miami Coffee *594 deposited into its bank account a $ 17,000 check from Edward and Geraldine dated December 31, 1985. Edward, Geraldine, and John reported on their Federal income tax returns for 1983 the amount of the loans distributed to them from Wilcafe as pass-through income with respect to Wilcafe. On their Federal income tax returns for 1983, Ann and Michael each reported the loans distributed to them from Wilcafe as dividend income. All petitioners reported on their Federal income tax returns for 1984 the amount of the loans distributed to them from Wilcafe as pass-through income with respect to Wilcafe. On their 1983, 1984, and 1985 Federal income tax returns, petitioners each claimed their pro rata share of Miami Coffee's and of Global Jalousie's losses, including in the calculations of their respective individual tax bases in those two corporations the loans that had been distributed to them by Wilcafe. Respondent disallowed the amounts of the losses claimed each year which he determined were in excess of petitioners' respective bases in Miami Coffee and Global Jalousie, excluding, in his calculations of petitioners' respective individual tax bases, the loans that had been distributed *595 to the shareholders by Wilcafe. The above-referenced $ 14,000 and $ 17,000 checks were included by petitioners, but excluded by respondent, in their respective calculations of petitioners' yearend individual tax bases in the stock of Miami Coffee and Global Jalousie. The following schedule sets forth the losses claimed by each petitioner each year and the portion thereof disallowed by respondent. Miami Coffee
1983
1984
Claimed
Disallowed
Claimed
Disallowed
Edward and Geraldine Wilson
$ 128,098
$ 49,204
$ 192,272
$ 192,272
Ann Wilson
$ 15,916
$ 6,072
$ 23,705
$ 23,705
Michael Wilson
$ 15,916
$ 6,072
$ 23,705
$ 23,705
1985
Claimed
Disallowed
Edward and Geraldine Wilson
$ 35,031
$ 35,031
Ann Wilson
$ 4,319
$ 4,319
Michael Wilson
$ 4,319
$ 4,319
Global Jalousie
1983
1984
Claimed
Disallowed
Claimed
Disallowed
Ann Wilson
$ 36,180
$ 10,626
$ 24,332
$ 24,332
John Wilson
$ 36,180
$ 10,626
$ 24,332
$ 24,332
Michael Wilson
$ 36,180
$ 10,626
$ 24,332
$ 24,332
1985
Claimed
Disallowed
Ann Wilson
$ 16,227
$ 16,227
John Wilson
$ 16,227
$ 16,227
Michael Wilson
$ 16,227
$ 16,227
*596 Respondent also determined an addition to tax under section 6661 with respect to each petitioner for each year in issue. OPINION Section 1366 provides for the pro rata pass-through of subchapter S corporate income, losses, and deductions to the shareholders. Section 1366(d), however, limits the total amount of pass-through losses and deductions that can properly be claimed by shareholders of subchapter S corporations to the sum of the shareholders' adjusted bases in the stock of the corporations and the shareholders' adjusted bases in any indebtedness owed by the corporations to the shareholders. Losses and deductions disallowed in one year because the shareholders lack sufficient bases may be claimed in subsequent years when the shareholders' adjusted bases are sufficient. [3]
*597 To qualify as an "indebtedness" under section 1366(d)(1)(B) court cases have generally held that the indebtedness must have been acquired by the shareholders through an actual economic outlay. Estate of Leavitt v. Commissioner, 90 T.C. 206, 217 (1988), affd. 875 F.2d 420 (4th Cir. 1989); Underwood v. Commissioner, 63 T.C. 468, 476 (1975), affd. 535 F.2d 309 (5th Cir. 1976); Perry v. Commissioner, 54 T.C. 1293, 1296 (1970), affd. per order 1971 U.S. App. LEXIS 10225, 27 A.F.T.R.2d (RIA) 1464, 71-2 U.S. Tax Cas. (CCH) P9502 (8th Cir. 1971). Cf. Selfe v. United States, 778 F.2d 769, 772 (11th Cir. 1985). The economic outlay required under section 1366(d)(1)(B) must leave "'the [taxpayers] poorer in a material sense.'" Perry v. Commissioner, supra at 1296 (quoting Horne v. Commissioner, 5 T.C. 250, 254 (1945)); Underwood v. Commissioner, supra at 476. Petitioners argue that the loans of Miami Coffee and Global Jalousie that are in question in this case represent loans or indebtedness owed by these corporations to petitioners *598 that meet the economic outlay requirement of section 1366(d) because petitioners received the loans as a result of dividend distributions from Wilcafe, and petitioners therefore argue that their adjusted bases in these loans under section 1366(d) should be included in the calculations of their individual tax bases in the indebtedness of Miami Coffee and Global Jalousie. Petitioners Edward, Geraldine, Ann, and John also argue that their respective $ 14,000 and $ 17,000 checks dated December 30, 1985, and December 31, 1985, were delivered to Miami Coffee and to Global Jalousie on December 31, 1985, and therefore that their adjusted tax bases in Miami Coffee and in Global Jalousie, for purposes of determining the loss limitations under section 1366(d), should be increased by the amount of these checks. Respondent argues, among other things, that the receipt by petitioners of the loans of Miami Coffee and of Global Jalousie (through the distributions from Wilcafe) does not satisfy the economic outlay requirement of section 1366(d). Respondent also argues that the $ 14,000 and $ 17,000 checks to Miami Coffee and to Global Jalousie were not delivered until 1986, the year they were deposited *599 by the corporations into the corporate bank accounts, and therefore that the checks should not be included in the individual shareholders' tax bases with respect to the indebtedness of these corporations for 1985. In cases involving fact situations very similar to those before us in the instant case, this Court has addressed the economic outlay requirement of section 1366(d). In Burnstein v. Commissioner, T.C. Memo 1984-74, the taxpayers were shareholders of two subchapter S corporations. One of the corporations loaned money to the other corporation and received no promissory notes in return. At the end of the year, the corporations' accountant made adjustments and closing entries in the corporations' books, among other things, reclassifying the loan as a loan from the shareholders to the debtor corporation. In Shebester v. Commissioner, T.C. Memo 1987-246, essentially the same facts and reclassification occurred as in Burnstein v. Commissioner, supra, except that at the end of the year the amount of the loan on the books of the creditor corporation was charged against the shareholders' share of the undistributed *600 taxable income, thereby arguably paying off the creditor corporation. The loan was then reclassified as a loan from the shareholders to the debtor corporation. We held that the shareholders in both Burnstein and Shebester were not entitled to include the reclassified loans in their bases in calculating the amount of the losses allowable under section 1366(d) because the shareholders did not make an actual economic outlay with respect thereto. Consistent with the above cases, because petitioners herein did not make an actual economic outlay with respect to the loans in question, we hold that petitioners herein are not entitled to include the reclassified loans in question in this case in their tax bases in calculating the amount of the losses of Miami Coffee and of Global Jalousie that can be passed through to them under section 1366(d). The receipt of the loans by petitioners through the distributions of the loans by Wilcafe does not constitute an economic outlay by petitioners. The loans in question were acquired by petitioners with no economic outlay on petitioners' part. Petitioners invested nothing in Miami Coffee or Global Jalousie upon distribution to them of the *601 loans in question. We hold for respondent on this issue. Petitioners bear the burden of proof to show that the checks they included in their tax bases for 1985 actually were contributions to capital or caused the corporations to become indebted to them in that year. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). Ann's check dated December 30, 1985, and John's check dated December 31, 1985, were both deposited by Global Jalousie on January 9, 1986. John did not testify, and no evidence was offered as to when John delivered his check to Global Jalousie. Edward and Ann's testimony on this point was vague and unconvincing. Petitioners have failed to meet their burden of proving that the checks were delivered to these corporations in 1985, and respondent is sustained as to these adjustments. Respondent's calculations under section 1366(d) of petitioners' respective tax bases in the stock and indebtedness of Miami Coffee and of Global Jalousie are sustained. Additions to Tax
Section 6661 imposes an addition to tax equal to 25 percent of the amount of underpayments attributable to substantial understatements. Substantial understatements are underpayments *602 that exceed the greater of 10 percent of the amount required to be shown on the return or $ 5,000. Taxpayers may avoid liability for the addition if the taxpayers adequately disclosed or had substantial authority for the positions taken on the returns. Petitioners failed to disclose adequately the positions taken on their tax returns, and we have not found that they had substantial authority for their positions. They are therefore liable for the additions to tax under section 6661. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners claim a total increase in their bases in Miami Coffee in 1983 of $ 86,000 (Edward and Geraldine -- $ 62,780, and Ann, John, and Michael -- $ 7,740 each). The reason the total principal amount of the notes apparently was not treated as increasing petitioners' tax bases is not explained.↩
3. Sec. 1366(d)(1) and (2) provides as follows: (d) Special Rules for Losses and Deductions. -- (1) Cannot exceed shareholders' basis in stock and debt. -- The aggregate amount of losses and deductions taken into account by a shareholder under subsection (a) for any taxable year shall not exceed the sum of -- (A) the adjusted basis of the shareholder's stock in the S corporation (determined with regard to paragraph (1) of section 1367(a) for the taxable year), and (B) the shareholder's adjusted basis of any indebtedness of the S corporation to the shareholder (determined without regard to any adjustment under paragraph (2) of section 1367(b) for the taxable year). (2) Indefinite carryover of disallowed losses and deductions. -- Any loss or deduction which is disallowed for any taxable year by reason of paragraph (1) shall be treated as incurred by the corporation in the succeeding taxable year with respect to that shareholder.↩