[PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

---

No. 97-8290

---

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
02/04/99
THOMAS K. KAHN
CLERK

D. C. Docket No. 1:90-CV-1403-HTW

DAVID G. CAMPBELL, M.D.,

Plaintiff-Appellant,

versus

EMORY CLINIC, A Partnership,
EMORY UNIVERSITY,
H. D. CAVANAGH, M.D.,
CHARLES R. HATCHER, M.D.,

Defendants-Appellees.

---

No. 97-8291

---

D. C. Docket No. 1:91-CV-3030-HTW

J. ALLEN GAMMON, M.D.,

Plaintiff-Counter-Defendant,
Appellant,

versus

EMORY CLINIC, A Partnership,
EMORY UNIVERSITY,
CHARLES R. HATCHER, M.D.,

Defendants-Appellees,

H. D. CAVANAGH, M.D.,

Defendant-Counter-Claimant,
Appellee.

---

Appeals from the United States District Court
for the Northern District of Georgia

---

(February 4, 1999)

Before TJOFLAT, Circuit Judge, and GODBOLD and HILL, Senior Circuit Judges.

HILL, Senior Circuit Judge:

For disposition, we consolidate these two appeals.[1] The allegations upon which both complaints were based are virtually identical. They both have been subject to years of protracted litigation. Upon careful review of the record, we find only two issues remaining. One is procedural; one is substantive. First, the district court did not abuse its discretion in denying motions filed by appellants David G. Campbell, M.D. and J. Allen Gammon, M.D. for leave to amend their complaints to assert a breach of fiduciary duty claim against the individual appellees, H. D. Cavanagh, M.D. and Charles R. Hatcher, M.D. Second, as a substantive matter, the district court did not err in granting summary judgment in favor of the appellees, individual or otherwise, on appellants' claims for tortious interference with business relations and conspiracy to tortiously interfere. Based upon the following, we affirm the judgments of the district court.

## I. PROCEDURAL BACKGROUND

---

[1] Campbell and Gammon filed separate complaints in the district court. They were represented by the same counsel. Although the cases contained common questions of law and fact, they were not consolidated by the district court until November 22, 1996, upon defendants' motion. Campbell and Gammon dismissed all remaining claims on March 20, 1997. At oral argument the cases were argued together.

Campbell filed his complaint in 1990. Gammon filed in 1991. Both plaintiffs alleged, among other things, that certain of the defendants possessed questionable medical abilities and used fraudulent billing practices for medical procedures. When plaintiffs "blew the whistle," they alleged, the defendants breached various legal duties to them to cover up improper actions. Plaintiffs each alleged numerous federal and state claims.[2] While the complaints contained a claim for breach of the duty of good faith against Emory Clinic, they did not contain separate claims for breach of fiduciary duty against Hatcher and Cavanagh, individual defendants, and partners in the Emory Clinic.[3]

Years of litigation followed. Then, in October 1994 (in the <u>Campbell</u> case), and March 1995 (in the <u>Gammon</u> case), the appellees moved for summary judgment.[4] In support of its motions, the appellees argued that undisputed facts demonstrated that appellants' claims were based upon self-serving conclusory allegations or hearsay, or

---

[2] These included claims against all four defendants for tortious interference with business relations and conspiracy to tortiously interfere; claims against Emory University alone for breach of contract and breach of the duty of good faith; claims against Emory Clinic alone for breach of the partnership agreement and breach of the duty of good faith. Additional antitrust and other claims have been separately disposed of on appeal (Nos. 96-8543 and 96-8544) and are not part of this appeal.

[3] It is interesting to note that, unlike the breach of good faith counts, the tortious interference counts are styled separately, in the name of each defendant, individual or otherwise.

[4] Summary judgment was sought on numerous claims, including the tortious interference with business relations and the conspiracy to tortiously interfere claims.

that the conduct alleged was privileged. On July 27, 1995 (Campbell), and August 22, 1995 (Gammon), the district court granted the appellees' motions for summary judgment.

In response, Campbell (August 1995) and Gammon (September 1995) each moved for partial reconsideration of the summary judgment orders, alleging for the first time according to the defendants, a breach of fiduciary duty claim against Hatcher and Cavanagh. Defendants claim that plaintiffs recast their breach of good faith claim against the Emory Clinic as a claim for "the tortious breach of the duty of good faith by the Clinic partners." Plaintiffs asserted that their now voluminous pleadings contained a breach of fiduciary claim against these individual defendants.

In the procedural confusion that ensued,[5] the first reaction of the district court, on September 28, 1995, was to reconsider its orders of July 27 (Campbell) and August 22 (Gammon), grant plaintiffs' motions for partial reconsideration, and find the breach of fiduciary duty claim to be in the cases. Six months passed. Upon reflection, the district court corrected its own mistake. It found that neither Gammon (March 21, 1996) nor Campbell (June 6, 1996) had pled a breach of fiduciary duty claim against the individual defendants and dismissed the claim in both cases. Then, on June 6,

---

[5] The district court admonished counsel for both parties for providing the court with inconsistent briefs, resulting in inconsistencies between the two cases.

1996, the district court, again on its own motions, reinstated summary judgment for appellees.

Plaintiffs were not deterred. On June 20, 1996, they moved for leave to amend their complaints to assert claims for breach of fiduciary duty, arguing that these claims "had been part of the case" for six months - that is, the six months that passed before the district court corrected its mistake on its own motion.

In its discretion, on August 26, 1996, the district court denied plaintiffs' motions to amend, stating that they "ha[d] not brought, and may not bring, a breach of fiduciary duty claim against defendants Hatcher and/or Cavanagh." This consolidated appeal follows.

## II. FACTUAL BACKGROUND[6]

Campbell and Gammon are physicians specializing in ophthalmology. Campbell was a tenured associate professor at Emory University Medical School[7] and

---

[6] We provide a brief overview of the facts of the underlying lawsuits for the reader's benefit, although not germane to our discussion of the amendment issue discussed in Part IV.A of this opinion.

[7] Appellee Emory University operates the medical school as a private Atlanta institution.

a partner in the appellee Emory Clinic (Clinic).[8] Gammon was an assistant professor on a tenure track at the medical school and also a partner in the Clinic. Hatcher[9] and Cavanagh[10] are also faculty members of the medical school and Clinic partners.

The underlying lawsuits have their origins in 1982 when Campbell and Gammon actively assumed the role of whistleblowers as to Cavanagh's medical ability. This foreshadowing culminated in September 1983, when Cavanagh operated on the wrong eye of a patient.[11] At a faculty meeting three days later, Campbell called for a review of the surgery. Gammon seconded the motion. As a result, the Waring Committee,[12] was convened to investigate the surgery and issue a report. When it did, Campbell and Gammon were not satisfied and continued actively to voice their concerns. Two years later, another committee, the Tindale Committee,[13] was

---

[8] Emory Clinic is affiliated with Emory University.

[9] Hatcher was not an ophthalmologist but from 1976 to 1984 was department chairman and section head of the Cardiothoracic Surgery Section and a Clinic director. In 1984 he became Emory Clinic's chief financial officer, vice president of health affairs for Emory University and medical center director.

[10] Cavanagh was an ophthalmologist who served as department chairman and section head of Emory Clinic's ophthalmology section.

[11] This case resulted in a substantial settlement. The publicity generated by the case caused the filing of ten or eleven more malpractice cases.

[12] The Waring Committee was composed of tenured Emory Clinic ophthalmologists.

[13] The Tindale Committee was a pre-existing professional standards and ethics committee made up of chairmen and professors from various departments (excepting ophthamology) within the medical school.

convened to review Cavanagh's practice.

Ironically, yet allegedly unrelated, on the same day the Tindale Committee issued its report, Campbell was reprimanded by the Clinic director for repeatedly making and discussing allegations about Cavanagh's medical abilities with ophthalmologists all over the country, outside the University family. Campbell resigned and joined the faculty of Dartmouth College and became a member of its affiliated clinic.

During this same time frame, Gammon's career took a similar tack. Ironically, it was Cavanagh who began to express concerns about Gammon's ability to achieve tenure based upon the number and quality of Gammon's publications. For what was to be a two-year term, Gammon switched to a clinical (versus tenure) track professor with hopes to improve his academic standing. In addition, Gammon applied for and received two extensive research grants. Gammon thought this would improve his academic standing. The University thought otherwise. On what it perceived to be an over-commitment to research, the University undertook to accommodate the research commitment by decreasing Gammon's clinical practice, moving him to another hospital.[14]

---

[14] Emory University decided that Gammon would have to give up his administrative appointments as chief of pediatric ophthalmology and chief of ophthalmology at Henrietta Egleston Hospital, the children's hospital at Emory University. It also decided that Gammon would have to move from the new Emory Eye Center to Crawford Long Hospital, another of the

Gammon asserted that he felt "evicted." He claims these changes were due to his whistle blowing activities regarding Cavanagh's medical practice. University claims its actions were based upon legitimate business reasons.

Gammon then requested and received a one-year leave of absence for the second year of his two-year term. He accepted a job in Saudi Arabia. At the end of the two-year term, the University did not renew his appointment on the faculty and Gammon was automatically withdrawn from the Clinic.

## III.  STANDARD OF REVIEW

We review the denial by the district court of plaintiffs' motions to amend their complaints under an abuse of discretion standard. Lockett v. General Finance Loan Co. of Downtown, 623 F.2d 1128, 1130 (5th Cir. 1980). We review the grants of summary judgment by the district court *de novo*. Jaques v. Kendrick, 43 F.3d 628, 630 (11th Cir. 1995).

## IV.  DISCUSSION

A. The Amendment to the Complaint Claims

Count XI of Campbell's amended complaint and Count XII of Gammon's complaint are titled "Breach of Duty of Good Faith by Defendant Clinic." Cavanagh and Hatcher were not named as defendants in this count. They did not undertake to

___

locations of the department of ophthalmology.

8

answer it.  Paragraph 100 of Campbell's amended complaint (paragraph 115 of Gammon's complaint) reads in full "Defendant Clinic owed certain duties to Plaintiff, including the duty to act in good faith and duty of fairness.  Defendant Clinic, *acting by and through various of its Partners,* breached these duties owed to Plaintiff." (Emphasis added).  The next paragraph in each complaint states that "As a direct and proximate result of the Clinic's breach of duty Plaintiff has suffered <u>actual</u> <u>damages</u> in an amount to be shown upon the trial of this case." (Emphasis in original).  The last paragraph of this count reads:

> The actions and conduct of Defendant Clinic herein alleged were intentional, malicious, intended to injure, and in bad faith, therefore demanding imposition of punitive damages against Defendant Clinic and entitling Plaintiff to recover his expense of litigation, including attorneys fees, in such amounts as shall be determined by the jury upon trial of this case.

Nowhere in any of the paragraphs of the counts are mentioned the names of Hatcher or Cavanagh; neither does the term "fiduciary" appear.

First, appellants argue, apparently invoking the doctrine of notice pleading, that these individuals, must have been aware of the claims asserted against them and the grounds upon which they rest, especially in view of the language "acting by and through various of its Partners."  See <u>Fed. R. Civ. P. R.</u> 8(a); <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 168 (1993).  We conclude, however, under the notice pleading doctrine, that the complaints failed to

provide notice to Hatcher, Cavanagh, or the court, that a claim for breach of fiduciary duty was asserted against these two individuals under either complaint.[15]

Next, appellants argue a type of virtual reality, more closely akin to the "Emperor's new clothes." They seize upon the error made earlier by the district court, and assert that the claims were "in the case" because they and the court had been proceeding as such for six months, from the Fall of 1995 to the Spring of 1996. Appellants contend that the court record is virtually littered with references to these claims in briefs and motions filed by them with the court. See Foster Medical Corp. Employees' Pension Plan v. Healthco, Inc., 753 F.2d 194, 197 (1st Cir. 1985) (where claim was sufficiently pled even though not specifically pled in complaint in light of references in opposition to summary judgment). They reiterate this "implied litigation" theory by pointing to the fact that these claims were in the proposed pretrial order and that the district court recognized the claims to be in the case when it reconsidered and denied summary judgment. We are not persuaded.[16]

Third, appellants point out that leave to amend "shall be freely given when

---

[15] See Foster Medical Corp. Employees' Pension Plan v. Healthco, Inc., 753 F.2d 194, 197 (1st Cir. 1985); Vidimos, Inc. v. Laser Lab Ltd., 99 F.3d 217, 222 (7th Cir. 1996). See also Plumbers & Steamfitters Local No. 150 v. Vertex Const. Co., 932 F.2d 1443, 1448 (11th Cir. 1991).

[16] Of course, there would naturally be references to this "claim" during the six months that the district court erroneously thought it in the cases.

10

justice so requires," See Fed. R. Civ. P. R. 15(a) and the cases so holding.[17] They

claim that disallowance of the amendment elevated technical pleading skills over the

substantive merits of their cases and the district court abused its discretion in denying

their motions to amend.

Rule 15(a) gives a district court "extensive discretion" to decide whether or not

to allow a party to amend a complaint. Hargett v. Valley Federal Sav. Bank, 60 F.3d

754, 761 (11th Cir. 1995). This liberal discretion is not abused when the amendment

would prejudice the defendant, follows undue delays, or is futile. Technical Resource

Services, Inc. v. Dornier Medical Systems, Inc., 134 F.3d 1458, 1463-64 (11th Cir.

1998). Prejudice and undue delay are inherent in an amendment asserted after the

close of discovery and after dispositive motions have been filed, briefed, and decided.

Jameson v. Arrow Co., 75 F.3d 1528, 1534 (11th Cir. 1996).

Here, these motions for leave to amend were filed more than one year after

discovery had ended, after dispositive motions had been filed, and between five-and-

---

[17] Davis v. Piper Aircraft Corp., 615 F.2d 606, 612-14 (4th Cir. 1980)(where the rules were designed to adjudicate actions on their merits, not on technical aspects of pleading); U.S. v. Hougham, 364 U.S. 310, 317 (1960) (where the pleadings should facilitate a proper decision on the merits, not be a game of skill where one misstep decide the outcome); Foman v. Davis, 371 U.S. 178, 182 (1962)(where leave to amend should be 'freely given' in the absence of reasons such as undue dely, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendment, undue prejudice, etc.).

six years after the lawsuits were begun.[18] The facts upon which the claims for breach of fiduciary duty against the individual defendants were based were available at the time the complaints were filed. We conclude the district court did not abuse its discretion in denying the motions to amend. Amendment at the late date offered would have been futile, caused undue delay and expense, and resulted in unfair prejudice to the individual defendants. Id.

B. Grant of Summary Judgment on Employment Related Issues

Under our de novo review, we conclude that the merits of this substantive issue have been thoroughly analyzed by the district court in its orders of July 27, 1995 (Campbell) and August 22, 1995 (Gammon), granting summary judgment to appellees on appellants' tortious interference and conspiracy to tortiously interfere claims; reinstating summary judgment on June 6, 1996; and denying appellants' motions to amend on August 26, 1996.[19]

There are no genuine issues of material fact, summary judgment is appropriate, and the appellees are entitled to judgment as a matter of law. We applaud the tenacity of the district court in its handling of these needlessly confusing cases and affirm this

---

[18] Early in the case, Campbell was twice granted leave to amend his complaint to assert fraud and antitrust claims, with the district court expressly noting that the case was still in discovery, that dispositive motions had not been filed, and that there would be "no delay in this matter which will unduly prejudice defendants."

[19] See also Part I supra.

12

issue based upon these orders of the district court.

## V.  CONCLUSION

We conclude that the district court did not abuse its discretion in denying appellants' motions for leave to amend to assert breach of fiduciary duty claims against the individual appellees.  Neither did it err in granting summary judgment to appellees on the tortious interference with business relations claims and conspiracy to tortiously interfere.  The judgment of the district court, in each case, is

AFFIRMED.